[No. 16907.  Department Two.  April 11, 1922.]

R. L. JORDAN, *Respondent*, v. CHRIS RIEKER *et al.*, *Appellants*.

G. W. BASSETT, *Respondent*, v. CHRIS RIEKER *et al.*, *Appellants*.[1]

EVIDENCE (2) — JUDICIAL NOTICE — COMMON KNOWLEDGE. The courts will take notice that coal oil poured on coals in a kitchen stove may cause an explosion.

NEGLIGENCE (3)—FIRES—EVIDENCE. There is sufficient evidence that defendant's negligence caused an explosion and fire in a garage, where it appears that he was trying an experiment in heating the place by connecting a preheating torch with a stove in an effort to burn oil.

Appeal from a judgment of the superior court for Adams county, Back, J., entered January 8, 1921, upon

[1]Reported in 205 Pac. 1043.

findings in favor of the plaintiffs, in consolidated actions for damages to property by fire, tried to the court. Affirmed.

*G. E. Lovell* and *E. A. Davis,* for appellants.

*Samuel P. Weaver* and *Weaver & Boyles,* for respondents.

Hovey, J.—These are consolidated actions wherein the respondents recovered judgments for the value of their respective automobiles, destroyed by fire in a garage belonging to the appellants.

The fire occurred about nine o'clock in the morning on December 9, 1919. The weather was very cold and the building was heated by two stoves, one in the front part and one in the back part, which was partitioned off as a workshop. The fire started in or about the stove in the rear. The stove was being heated with coal and, according to the testimony, the fire was low and consisted only of coals, some of the witnesses saying the coals were red hot, and another one that they were pretty well burned out.

The manager of this garage, Judisch, shortly before the fire, made the statement, according to several witnesses, that he was going to try an experiment and burn oil instead of coal. It is undisputed that he caused a welding tank to be rigged up with a length of hose, attached at one end to the tank and the other end to an iron pipe which had at its other end a preheating torch such as is used for welding, and this preheating torch was in the stove when the fire started. The tank was connected up with the air pressure system of the garage. Although there is some dispute as to whether it had been made to work perfectly at the time of the fire, it is fair to assume from the testimony that it was working. The tank was supposed to

be emptied of fuel when fitted up, but Judisch told one of the employees to get a can and put oil in it. It is disputed that there was oil in it at the time of the fire, but as considerable time elapsed between the time the employee started to get the oil and the explosion, and he only had to go across the room, it is fair to assume that he put the oil in there.

The only direct testimony as to the starting of the fire is that there was first smoke and then flame from the stove door, and it is undisputed that this flame soon spread itself the full length of the building, probably being carried by the gas which accumulated there from the automobiles, of which a good many were stored in the building.

The explanation of Judisch is that he put the pre-heating device in the stove merely to get it hot, and that he was then going to keep it outside in the room with the oil burning, and that the heat from this torch would supplement the heat from the stove, and that they found in the summertime that the torch made an unpleasant amount of heat and he thought they would utilize it in cold weather. As against this explanation is his statement that he was going to try an *experiment*. The use which he suggested would not be an experiment, but something that he well understood. One witness testified that, a few minutes after the fire started, Judisch exclaimed: "My God, what have I done?," and that the shop foreman said to him: "Don't whimper how the fire started."

Certain experts were called for the appellants, who testified that the valves of the tank could be left open and the fuel be allowed to run on a fire without danger, but the court can take judicial knowledge of what happens when coal oil is poured on the coals in the kitchen stove. Unless there is a flame, gas generates.

While in this case the evidence is to the effect that no one heard any explosion, the explosion necessary to start this fire need not have been loud enough to be heard by the employees, none of whom seemed to have been right at the stove when the fire started.

Appellants severely attack the judgments of the trial court as not justified by the testimony, but we believe there was sufficient to establish liability. We consider the following cases in point: *Graaf v. Vulcan Iron Works*, 59 Wash. 325, 109 Pac. 1016; *Wodnik v. Luna Park Amusement Co.*, 69 Wash. 638, 125 Pac. 941, 42 L. R. A. (N. S.) 1070.

The judgments are affirmed.

PARKER, C. J., and MAIN, J., concur.

HOLCOMB, J., concurs in the result.

MACKINTOSH, J., concurs with HOLCOMB, J.